UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-cv-20226-ALTMAN

**ALBERTO FLORES-REYES**,

    *Petitioner*,

v.

**ASSISTANT FIELD OFFICE DIRECTOR**, *et al.*,

    *Respondents*.

_____/

## **ORDER**

Our Petitioner, Alberto Flores-Reyes, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his ongoing immigration detention by the Respondents. *See* Petition for Habeas Corpus ("Petition") [ECF No. 1]. After careful review, we **DENY** the Petition.

### **BACKGROUND**

On August 19, 1996, Flores-Reyes, a Cuban national, pled guilty in state court to one count of attempted murder in the second degree. *See* Petition ¶¶ 1–6. While Flores-Reyes was serving his sentence for that crime, the U.S. Government initiated deportation proceedings against him—and, on February 24, 1997, "the U.S. Immigration Court [ ] entered an order of exclusion/deportation against the Petitioner." *Id.* ¶ 8. After Flores-Reyes served four years and two months of his prison term, Immigration and Naturalization Service ("INS") took him into custody "for the purpose of executing the February 24, 1997, order of exclusion/deportation the Petitioner had become subject to." *Id.* ¶ 10. Flores-Reyes was detained—but not deported—by INS from June 8, 2000, to June 19, 2002. *See id.* ¶ 12. Because INS was unsuccessful in deporting Flores-Reyes, on June 19, 2002, U.S. Immigration and Customs Enforcement ("ICE") released Flores-Reyes under an Order of Supervision. *See id.* at ¶ 11.

Over twenty years later, on October 29, 2025, ICE again detained Flores-Reyes "for the purpose of executing the February 24, 1997, order of exclusion/deportation." *Id.* ¶ 13. Flores-Reyes filed this Petition on January 13, 2026, alleging that his detention is unlawful under *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), and requesting an emergency order enjoining the Respondents from transferring him to an immigration facility outside our District. *See generally* Petition.

## THE LAW

Section 2241 permits district courts to grant relief to petitioners held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to deportation proceedings are cognizable under 28 U.S.C. [section] 2241." *Orozco v. INS*, 911 F.2d 539, 541 (11th Cir. 1990) (cleaned up).

Section 1231(a) of Title 8—the post-removal detention provision of the Immigration and Nationality Act—applies to aliens who are subject to a final order of removal. *See* 8 U.S.C. § 1231(a). When an alien is ordered removed, the Attorney General must remove the alien from the country within 90 days. *See id.* § 1231(a)(1)(A). During this 90-day period, some criminal aliens remain detained. *See id.* § 1231(a)(2). But the Supreme Court has given the government a bit more time to deport aliens like our Petitioner:

> It is unlikely that Congress believed that all reasonably foreseeable removals could be accomplished in 90 days, but there is reason to believe that it doubted the constitutionality of more than six months' detention. Thus, for the sake of uniform administration in the federal courts, six months is the appropriate period. After the 6–month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing.

533 U.S. at 699. To obtain relief from a post-removal order of detention, then, a petitioner must: (1) show that he's been detained for more than six months; and (2) establish that there's no significant likelihood of removal in the foreseeable future. *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[T]o state a claim under *Zadvydas* the alien not only must show post-removal order detention

2

in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

## ANALYSIS

### I. The Petitioner's *Zadvydas* Claim

Flores-Reyes's *Zadvydas* claim is premature and must be denied. Flores-Reyes was detained on October 29, 2025, so his current detention is presumptively reasonable until April 27, 2026, and any petition filed before that date is premature. *See Zadvydas*, 533 U.S. at 699 ("Thus, for the sake of uniform administration in the federal courts, six months is the appropriate period."); *see also Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien [ ] must show post-removal order detention in excess of six months[.]"). Flores-Reyes argues that, for purposes of his *Zadvydas* claim, the length of his *current* detention should be added to his *prior* detention, which lasted from June 2000 to June 2002. *See* Petition ¶ 36 ("[Petitioner's detention for] more than two years—from June 2000 to June 2002—when considered in the aggregate with more than two months of current detention, triggers release of the Petitioner from the Respondents custody[.]" (cleaned up)). But, as the Respondents observe, "[i]f [the] Petitioner's argument concerning prior detention is accepted, and detention from over twenty years ago is considered in the aggregate to his current detention, his detention for even one day to enforce the order of exclusion would raise constitutional concerns." Government's Response to Order to Show Cause ("Response") [ECF No. 10] at 6 (citing *Barrios v. Ripa*, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (Gayles, J.)). That cannot be the law.

In *Barrios*, Judge Gayles refused to aggregate a petitioner's previous and current detentions for *Zadvydas* purposes, reasoning that doing so would require the judicial branch to opine on the constitutionality of subsequent detention periods of "even one day," which would "obstruct an area that is in the discretion of the Attorney General—effectuating removals." *Barrios*, 2025 WL 2280485, at *8 (citing 8 U.S.C. § 1252(g)). Other courts have reached similar conclusions. *See Meskini v. Att'y*

3

*Gen. of U.S.*, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018) (Land, C.J.) (finding that *Zadvydas* is not a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." (cleaned up)).

We agree with the reasoning of these cases. Given the executive branch's immigration-related expertise and statutory authority to effectuate removals, we don't think *Zadvydas* precludes the government from detaining a criminal alien for "even one day" just because he was detained for six months over twenty years ago. *See Zavydas*, at 700 ("We recognize . . . that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters.").

Plus, the animating question in *Zadvydas* was the "likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. And what was reasonably foreseeable in 2002 may well be markedly different from what's reasonably foreseeable today. Suppose the government had detained a criminal alien in late 2019 to effectuate his removal. Imagine too that, despite the government's best efforts, no country would accept the alien because of COVID-related border closures. Suppose, finally, that after six months—and in the absence of any reasonably imminent removal—the government decided to release him. Fast forward to 2026, when countries have reopened their borders and resumed accepting repatriations. In these changed circumstances, we don't think the government's renewed detention of the same alien is necessarily problematic. And we think this kind of flexibility—particularly in cases like ours where multiple detentions are separated by two decades—reflects the kind of balance *Zadvydas* hoped to achieve: preserving the government's authority to effectuate removals while safeguarding the individual's liberty interests against indefinite detention.

Resisting this proposition, Flores-Reyes cites *Krechmar v. Parra*, in which the district court warned that failing to aggregate prior detentions could "effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every six months." 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025) (Chappell, J.). Whatever its merits, this concern has little application here. Flores-Reyes's prior detention ended in 2002—over twenty years (and three different administrations) ago. And there's no evidence that, in circumstances like ours, the government has engaged in the kind of evasive scheme Judge Chappell warned about.

Because we won't aggregate Flores-Reyes's two detentions, he hasn't satisfied the first prong of his *Zadvydas* claim.[1]

## II.    Transfer of the Petitioner

The Petitioner also requests that we issue an "emergency order to prevent the Respondents from relocating the Petitioner to a facility outside the jurisdiction of the U.S. District Court, Southern District of Florida[.]" Petition ¶ 5. He claims that such an order would prevent a "violation of his Sixth Amendment Right to Counsel." *Id.* ¶ 48. But he hasn't offered *any* authority for the proposition that any such order would be proper—much less necessary. He merely alleges that his transfer to a different facility would "disrupt ongoing legal representation." *Id.* ¶ 51. Flores-Reyes is already subject

---

[1] Because Flores-Reyes has failed to show that his detention exceeded the presumptively reasonable period, we needn't determine whether he's satisfied the second prong of *Zadvydas*—the likelihood of his removal in the foreseeable future. *See Akinwale*, 287 F.3d at 1052 ("[T]o state a claim under *Zadvydas* the alien . . . must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."). We add only that Flores-Reyes's position—that there *isn't* a significant likelihood of his removal in the foreseeable future—is incongruous with his actions in these proceedings. On January 16, 2026, he filed a Notice of Filing of Novel Evidence and Request for Stay ("Notice") [ECF No. 5], conceding that "the Petitioner is in imminent danger of being physically removed from the U.S." Notice at 1; *see also id.* at 2 ("The Emergency nature of this notice of filing arises from the Respondent's January 16, 2026, relocation of the Petitioner to another ICE holding facility for the purpose of staging the Petitioner for deportation, or, for execution of the Immigration Court's February 24, 1997, order of exclusion/deportation." (cleaned up)). The Notice asked that we "stay [Petitioner's] deportation" so "that this Court may be able to dispose with the Petitioner's habeas petition." Notice at 4. In any event, given what we've said here, we now **DENY as moot** the Notice to the extent it seeks any relief.

to a removal order, we're denying his habeas petition, and he concedes that "[a]t the time of filing, the Petitioner is not in active removal proceedings before an immigration judge," *id.* ¶ 46—so it's not clear how his transfer would disrupt any ongoing legal proceedings *or* under what authority Flores-Reyes would have us grant this request.

More importantly, we lack jurisdiction to enjoin the respondents from transferring Flores-Reyes to another facility. As other courts in our District (and across the country) have observed, "8 U.S.C. § 12529(a)(2)(B)3 and 8 U.S.C. § 1231(g)(1) strip the Court of jurisdiction 'to enjoin the government from transferring immigration detainees to other districts, as those decisions fall within the discretion of the Attorney General.'" *Boulos v. Dir., U.S. DHS ICE ERO Miami Field Office*, 2025 WL 4092609, at *2 (S.D. Fla. Dec. 11, 2025) (Bloom, J.) (quoting *Guerra-Castro v. Parra*, 2025 WL 1984300, at *2 (S.D. Fla. July 17, 2025) (Gayles, J.); *see also Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("An alien is guaranteed the right to counsel and the right to present witnesses and evidence at his deportation proceedings. An alien, however, does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." (cleaned up)).[2]

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

2. The Petitioner's Notice of Filing of Novel Evidence and Request for Stay [ECF No. 5] is **DENIED**.

---

[2] Section 1252(a)(2)(B)(ii) deprives courts of jurisdiction over "any decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]" 8 U.S.C. § 1252(a)(2)(B). Section 1231(g)(1), which appears within the same subchapter, provides that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).

3. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on February 13, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Noticing INS Attorney
Email: usafls-immigration@usdoj.gov